1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   XAI XIONG,

11              Plaintiff,                    No. CIV S-09-3345 MCE GGH P

12        vs.

13   H. KIRKLAND, et al.

14              Defendant.              FINDINGS AND RECOMMENDATION

15   _____/

16   **Introduction**

17              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Plaintiff is proceeding on his amended complaint, filed March 29, 2010 ("Am. Comp."),

19   in which he alleges that certain correctional officers at High Desert State Prison violated his

20   constitutional rights when he was transferred into administrative segregation and while he was

21   housed in that unit.  Plaintiff seeks an unspecified amount of money damages only.

22              Pending before the court is defendants' motion for summary judgment, filed on

23   July 22, 2011 (Doc. Nos. 40, 41, 42), to which plaintiff filed an opposition on September 15,

24   2011 (Doc. No. 46), after which defendants filed a reply on September 27, 2011 (Doc. No. 47).[1]

25   _____

26        [1]  Plaintiff has twice moved the court for extensions of time to file a sur-reply.  See Doc.
     Nos.  48, 50.  Both motions were denied, the first without prejudice to a new motion seeking

                                          1

1  The undersigned recommends that the motion for summary judgment be granted in part and

2  denied in part.

3  **Motion for Summary Judgment**

4         Defendants move for summary judgment on two grounds: (1) that there are no

5  genuine issues of material fact to support plaintiff's allegations that defendants violated his

6  constitutional rights; and (2) that the defendants are entitled to qualified immunity.

7         Plaintiff has filed a response to the motion which includes his own sworn

8  declaration.  His opposition does not include any objections to the defendants' statement of

9  undisputed facts, nor did plaintiff compile his own counter-statement of material facts.

10         Instead, plaintiff requests further discovery "to comparitively discount defendants

11  false contentions that petitioner suddenly altered all hygenical and sanitary habits, once petitioner

12  was placed in custodial care of defendants whose single act of probity of the 'Record of Daily

13  Activity' inheres on the credibility of said defendants."  (Doc. No. 46, p.2:9-15).  Discovery in

14  this case closed on March 11, 2011, (see Doc. No. 26), and this court previously denied

15  plaintiff's tardy request for an extension of the discovery deadline.  See Doc. No. 44.

16  **Background**

17         The following facts are undisputed unless otherwise noted.

18         Plaintiff is a state prisoner in the custody of California Department of Corrections

19  and Rehabilitation ("CDCR").  Defendants' Separate Statement of Undisputed Facts in Support

20  of Motion for Summary Judgment ("SUF") No. 1.  On November 24, 2006, a group of inmates

21  assaulted two correctional officers at High Desert State Prison ("HDSP").  SUF No. 2.  Plaintiff

22  was identified as one of the inmates who participated in the assault of the correctional officers.

23  SUF No. 3.  Plaintiff, along with the other inmates identified as having been involved in the

24  battery, were to be placed in the ad-seg unit.  SUF No. 4.  At HDSP, inmates processed into and

25

26  permission to file a sur-reply which included a copy of the proposed pleading, and the second for
    failure to comply with the court's prior order.  See Doc. Nos. 49, 51.

1    out of ad-seg are placed in handcuffs.  SUF No. 5.  On November 28, 2006, plaintiff was placed

2    in handcuffs and escorted by defendant Kirkland from his cell to a holding cage for processing

3    and placement in ad-seg.  SUF No. 6; SUF No. 43.[2]

4              Plaintiff alleges that he was escorted "into Z-unit with excessive force into a

5    holding cage."  Doc. No. 46, Declaration of Plaintiff ("Pl. Dec.") 1:24.   Specifically,

6              [Defendant Kirkland] forced me in there face first towards the wall.  He
               came from behind me, grabbed me from the back, forced me down, pushed
7              his hand on top of me where he had me at the bottom where I was laying
               down.

8    Doc. No. 42, Deposition of Plaintiff, taken March 10, 2011 ("Dep. Tr.") 14:14-18.

9    Plaintiff further alleges that, while in the holding cage,

10             H. Kirkland came up from behind me and force me down to the floor.
               With his hands pushing down on me with his weights.  He then taunt me
11             saying "I could squash you like a bug."  Then C/O Kirkland punch me in
               the face with an open palm and stand back up and back away from the
12             holding cage.

13   Pl. Dec. at 1:26-2:3.

14             Defendant Kirkland declares that at no time did he force plaintiff to the ground

15   with his hands or use any other means to force plaintiff to the ground.  Doc. No. 41, Declaration

16   of Defendant Kirkland In Support of Motion for Summary Judgment, dated July 22, 2011,

17   ("Kirkland Decl."), ¶ 7.  Defendant Kirkland additionally declares that he did not punch plaintiff

18   in the face with his palm, threaten him, or tell plaintiff that he would squash him like a bug.  Id.

19             Defendants Kissinger, Wright, and Garate were present when defendant Kirkland

20   escorted plaintiff into the holding cell.  Dep. Tr. 14:22-15:10; 16:4-14; 18:23-19:4; SUF No. 40.

21   _____

22        [2]  In his complaint and declaration, plaintiff claims that he was moved to administrative
     segregation on November 26, 2006.  However, in his deposition, plaintiff testified that he was
23   moved to ad-seg on November 28, 2006.  The CDCR Form 114 daily activity logs for plaintiff,
     maintained while he was in ad-seg, list his first day in ad-seg as November 28, 2006.  See
24   Declaration of Defendant Kirkland In Support of Summary Judgment, Ex. A (Doc. No. 41 at 7-
     43; Doc. No. 41-1 at 1-26) ("Kirkland Ex. A").

25        According to defendant Kirkland, defendants were required to keep and maintain a record
     of daily activity (the "RDAs") for inmates housed in ad-seg.  Kirkland Decl. ¶ 19.  The RDAs are
26   made and kept in the ordinary course of business.  Id.

1  Defendants deny that defendant Kirkland forced plaintiff to the ground, punched him in the face

2  with any open palm, or used any other means to force him to the ground of the holding cage.

3  SUF No. 7.  Defendants also deny that defendant Kirkland threatened to squash plaintiff, upon

4  his arrival in ad-seg or at any other time.  Id.

5         Plaintiff suffered no injury as a result of being pushed to the ground by defendant

6  Kirkland.  Dep. Tr. 18:4-8.  As to his allegation regarding defendant Kirkland's punch, plaintiff

7  alleges that he suffered injuries of "discoloration on my right cheek," for which he did not seek

8  medical treatment.  Dep. Tr. 19:5-23; 68:12-21.[3]  Plaintiff currently has no discoloration as a

9  result of the alleged punch.  Dep. Tr. 68:18-21.

10        After plaintiff was processed into ad-seg, he was escorted by defendant Wright

11  and non-defendant Renner from the holding case, and placed in a cell in ad-seg.  SUF. No. 8.

12  According to plaintiff,

13                I was escort [sic] to my assign cell with excessive force by C/Os Wright
                 and Renner.  With my hands in cuff behind me each C/Os put their require
14               arms through my and place their hands on both my shoulders.  They both
                 force my arm up which makes me bow forward to relief [sic] some pains
15               in both my shoulders and arms.  I was basically drag [sic] to my assign cell
                 #139.
16

17  Pl. Dec. 2:11-16.  According to plaintiff, he sometimes has pain in his left shoulder, but has

18  never sought or received medical treatment for the alleged shoulder injury.  Dep. Tr. 68:22-

19  69:19.[4]  Defendants deny that officers Wright and Renner manipulated or put pressure on

20  ─────────────────────

21         [3]  In his deposition, plaintiff alternatively claimed that he did not seek treatment for his
    cheek injury, and that he was "denied" treatment.  Dep. Tr. 19:11-23.  Plaintiff testified that he
22  sought medical treatment, by asking the unnamed officer on duty that night for a medical slip, but
    that treatment was denied.  Id.  Plaintiff does not provide any information about whether he
23  subsequently sought treatment, whether any subsequent treatment was denied, or whether he
    simply never sought treatment after the first night.  Notably, the DRA entry for December 4,
24  2006 reads: "MHSDS Staff referral - refused. Refused to see Dr. to C/O Ham." Kirkland Ex. A at
    1.

25         [4]  As with the discoloration injury, plaintiff alternatively claims that he did not seek
    treatment, and that he was denied treatment.  Dep. Tr. at 26:16-25 ("I didn't receive [any
26  treatment for the pain in my shoulders] because I couldn't get to medical.  I was unable to get to

                                          4

1   plaintiff's arms or shoulders during their escort, and additionally deny that they pushed or

2   dragged him into the ad-seg unit or to his cell.  SUF No. 9.

3            An inmate housed in ad-seg is permitted to possess in his cell a "fish kit"

4   containing toilet paper, a bar soap, a toothbrush, tooth powder, a comb, a plastic spoon, a paper

5   cup, a pen filer, and various CDCR forms.  SUF No. 12.  When plaintiff was housed in ad-seg,

6   he was given a fish kit that contained toilet paper, a bar soap, a toothbrush, tooth powder, a

7   comb, a plastic spoon, a paper cup, a pen filer, and various CDCR forms.  SUF No. 13.

8            Plaintiff alleges that he was not given a fish kit when he first arrived at his ad-seg

9   cell.  Pl. Dec. at 2:22-24.  According to plaintiff, he did not get a fish kit until "Thursday" -

10  because plaintiff has not provided the date, the court construes this designation to mean

11  Thursday, November 30, 2006, or two days after plaintiff was moved into ad-seg.  See footnote

12  2, supra.  Plaintiff alternatively claims that he was without a fish kit for five days - November

13  29th, November 30th, December 1st, December 2nd, and December 3rd.  Dep. Tr. 31:23-33:13.

14           An inmate housed in ad-seg was provided a bed roll containing two blankets, two

15  sheets, a towel, three shirts, three pairs of boxer shorts, three pairs of socks, a pair of shoes, and a

16  jumpsuit.  SUF No. 14.

17           Plaintiff was also given a bed roll containing two blankets, two sheets, a towel,

18  three tee-shirts, three pairs of boxer shorts, three pairs of socks, a pair of shoes, and a jumpsuit.

19  SUF No. 15.  Plaintiff alleges that, upon his arrival into ad-seg, defendant Kirkland gave him a t-

20  shirt, a pair of boxer shorts, and a pair of socks "that clearly had spit on it."  Pl. Dec. 2:4-7; 3:2-3.

21  Plaintiff further alleges that when he entered his first ad-seg cell, he found that one of the two

22  blankets, and both sheets, had been stuffed into the toilet.  Pl. Dec.  2:18-20; Dep. Tr. 28:17-

23  29:18.

24  \\\\\

25  ───────────────

26  medical.")  Also, as above, plaintiff does not provide any information about subsequent attempts
    to obtain treatment, if any.

1    Plaintiff further alleges that he and his cellmate were not provided with mattresses

2 upon their arrival in ad-seg.  Pl. Dec. 2:22; 3:4; Dep. Tr. 39:6-25.  Plaintiff claims that, during his

3 first night in cell number 139, defendant Wright kicked a mattress to the plaintiff's cell door, but,

4 when plaintiff asked if he could have the mattress, defendant Wright smiled and left.  Pl. Dec.

5 6:9-13.

6    Defendants allege that there was a mattress in the cell when plaintiff was placed in

7 ad-seg.  SUF No. 10.  Plaintiff alleges that he did not receive a mattress until he was moved to

8 his second cell, four days after he was originally moved into ad-seg.  Dep. Tr. 39:9-19.

9    When plaintiff was transferred from ad-seg cell number 139 to ad-seg cell number

10 136, he was provided with the same items listed above.  SUF No. 16.  Plaintiff further alleges

11 that, after he was moved to cell number 136, he received a fish kit "the next morning."  Pl. Dec.

12 4:22.[5]  Plaintiff further alleges that, when he and his cellmate were moved to their second cell,

13 the sheets and blankets were again stuffed into the toilet and "most of our cleaning supplies were

14 thrown away."  Pl. Dec. 4:4-6.  Officer Vincente, who is not a defendant, replaced the sheets and

15 blankets that same night when plaintiff asked for replacements.  Pl. Dec. 4:10-14.  Plaintiff

16 alleges that, the next day, he and his cellmate received a bedroll and mattresses.  Pl. Dec. 4:21-

17 22.

18    Defendants claim that they never provided plaintiff with clothing, linens, or

19 bedding that had been spat on or placed in the toilet.  SUF No. 21.  Defendants allege that, when

20 plaintiff was placed into his ad-seg cell, there was no visible indication of a toilet leak or

21 flooding.  SUF No. 11.  It is undisputed that plaintiff did not see defendant Kirkland or any other

22 defendant put plaintiff's blanket and sheet in the toilet, or spit on plaintiff's clothes.  SUF No.

23

24    [5]  Neither party provides the court with the date of plaintiff's move from cell number 139
to number 136, nor can this court find that the move is reflected in the RDAs.  This information
25 would have been helpful in light of plaintiff's various allegations regarding the dates that he was
brought into ad-seg, the dates that he did not have a fish kit or bedroll and mattress, and the dates
26 on which he was finally provided with these items.

22; see also Dep. Tr. 30:4-31:15; 54:1-55:6.

An inmate housed in HDSP's ad-seg is given grooming tools on days that grooming tools are given to the inmates. SUF No. 17. Plaintiff was given grooming tools while he was housed in ad-seg. SUF No. 18. Plaintiff claims that, upon his arrival in ad-seg, and upon arrival in his second cell, he and his cellmate could not use grooming tools. Pl. Dec. 3:26, 4:24. Plaintiff also claims that defendant Kissinger refused to issue him grooming tools, and that he ignored plaintiff's requests to use the grooming tools. Pl. Dec. 6:22-23. A review of the RDAs reflects that, from November 28, 2006 through February 28, 2007, the first three months plaintiff was in ad-seg, he was offered a shave or haircut at least 12 times. See Kirkland Ex. A at 1-10.

Inmates housed in HDSP's ad-seg unit may exchange their dirty clothes and linens for clean ones every week. SUF No. 19. Plaintiff alleges that, upon his arrival in ad-seg and when he was moved to his new cell, he was not able to exchange his clothing (Pl. Dec. 3:25-26, 4:24), and that defendant Kissinger refused to allow plaintiff to exchange his dirty sheets for new ones. Pl. Dec. 7:1-2. A review of the RDAs reflects that, from November 28, 2006 through February 28, 2007, the first three months plaintiff was in ad-seg,[6] his laundry was exchanged ten times, and that twice, torn sheets were confiscated after cell searches. See Kirkland Ex. A at 1-10.

Third watch officers were responsible to serve inmates in ad-seg with their dinner. SUF No. 23. Defendants always served plaintiff's dinners through the food port of his cell. SUF No. 24. Plaintiff variously claims that, beginning in November 2006 and continuing through May 2007, he did not receive food, in that the tray would contain only "residue," that the main course would be missing from his tray, or that the officers serving him tampered with his food by placing their hands in it. See Pl. Tr. 40:10-25, 42:9-14 (testimony concerning no dinner or only residue); 45:16-25 (testimony concerning no breakfast); 48:14-50:24 (testimony concerning no

---

[6] In his deposition, plaintiff testified that he was not allowed to exchange his dirty laundry in his first three months in ad-seg. Pl. Tr. 55:13-56:1.

1    main course); 50:25-53:25 (testimony concerning tampering).   Defendants allege that they did

2    not deny plaintiff the main course of his dinner meal or tamper with his food. SUF No. 24.

3             The RDAs for the period November 28, 2006 through May 31, 2007 show that

4    plaintiff was served breakfast, lunch, and dinner on all days except December 25, 2006; February

5    2, 2007, February 4, 2007; and February 9, 2007.  The entry for December 25, 2006 does not

6    indicate if plaintiff was served breakfast or lunch.  For the remaining dates, there are no entries

7    for the second watch, when breakfast and lunch are served.  See Kirkland Ex. A.

8             HDSP operational procedures required officers to conduct weekly cell inspections

9    to ensure that the ad-seg inmates properly maintained their cells, that inmates do not possess

10   items that they were not allowed to have, and that they are not in possession of illegal materials.

11   SUF No. 25.  The inspections were mandatory and done regardless of whether an inmate has

12   submitted an administrative grievance.  Id.  If the cell inspection discovered that an inmate

13   possessed items to which he was not entitled, such items were removed from the inmate's

14   possession, and the inmate was provided with a receipt identifying the items that were removed.

15   SUF No. 26.

16            Plaintiff alleges generally that "legal mails and personal letters, magazines and

17   newspapers" were improperly confiscated by the defendants during their cell searches, but that he

18   never received a receipt.  Pl. Dec. 5:11-14.  Defendants allege that while plaintiff was housed in

19   ad-seg, no items were ever removed from his cell during the mandatory inspections, and thus no

20   receipts were provided to plaintiff.  SUF No. 27.

21            Plaintiff additionally alleges that defendants searched his cell in retaliation for

22   administrative grievances filed by plaintiff alleging misconduct by defendant Kirkland.  See Doc.

23   No. 15, First Amended Prisoner Civil Rights Complaint filed March 29, 2010 ("Am. Comp."), at

24   3(b).

25            At HDSP, officers are required to conduct cell counts of inmates to ensure the

26   presence of the inmates (no escapes), and to ensure that the inmates were not ill or otherwise

1   required emergent attention.  SUF No. 28.  Plaintiff alleges that, during routine nighttime counts,

2   defendant Kirkland would either kick plaintiff's door to wake plaintiff or shine the light from his

3   flashlight in plaintiff's face until plaintiff woke up.  Am. Comp. at 3(d).

4          At all times relevant to this case, an inmate housed in HDSP's ad-seg unit was

5   given the opportunity to exercise a minimum of ten hours per week.  SUF No. 30.  Yard exercise

6   for an inmate in ad-seg may be suspended due to disciplinary offenses committed by the inmate.

7   SUF No. 31.

8          Inmates housed in HDSP's ad-seg were also permitted to shower three times per

9   week.  SUF No. 32.

10         Plaintiff claims that he was denied yard access from November 28, 2006 through

11  March 2007.  Dep. Tr. 64:15-65:17; see also Pl. Dec. 7:8 ("[f]or months, I was not allowed to

12  shower or go to yard.").

13         Plaintiff claims that he was denied shower access from November 28, 2007

14  through April 2007.  Dep. Tr. 65:18-67:4.

15         Plaintiff additionally claims that he did not refuse shower or yard access during

16  those periods.  Dep. Tr. 65:15-17; 67:1-4; see also Doc. No. 46, Plaintiff Response to Defendants

17  Motion for Summary Judgment, at 2 ("Plaintiff has at no time ever refused a shower or yard

18  exercise accessibility.")

19         An inmate's refusal to exercise or to shower is recorded in the daily activity log

20  for ad-seg inmates, the CDCR 114, "Record of Daily Activity" (the "RDAs").  SUF No. 33.

21  Each time plaintiff refused the opportunities for yard and exercise of shower, the letter "R," for

22  refused, appears under the column for that activity and the date on the CDCR Form 114.  SUF

23  No. 36.

24         According to the RDAs for plaintiff, provided by defendants, between November

25  28, 2006 and August 26, 2008 (reflecting plaintiff's entire time in ad-seg), plaintiff refused to

26  shower a total of one hundred and forty-one times.  SUF No. 34; Kirkland Ex. A (Doc. No. 41 at

1  7-43; Doc. 41-1 at 1-26).  During those same dates, the RDAs reflect that plaintiff refused to

2  attend yard time a total of eighty-one times.  SUF No. 35; Kirkland Ex. A.

3          In addition, a review of the RDAs reflects that, during the period November 28,

4  2006 through April 1, 2007, the longest period of time when plaintiff did not go to the yard,

5  either because of discipline (see Entry for Nov. 29, 2006: "No Yard Pending ICC"), lockdown

6  (see, e.g., Entry for December 9, 2006: "No Yard - Institutional Lockdown"), or refusal, was

7  from November 28, 2006 to January 28, 2007, a total of 62 days.  Plaintiff exercised on January

8  29, 2007, and then not again, for various reasons, until March 10, 2007, a total of 40 days.  See

9  Kirkland Ex. A.  The RDAs reflect that, after March 10, 2007, plaintiff exercised on March 14,

10  2007; March 30, 2007; and April 6, 2007.  Id.

11          A review of the RDAs further reflects that, between November 28, 2006 and May

12  1, 2007, plaintiff showered seven times, and refused a shower, during that same period, a total of

13  fifty-six times.  See Kirkland Ex. A.

14          At HDSP, officers are required to sign for mails received from inmates, and then

15  to send them to the mail room for processing.  SUF No. 37.  While plaintiff was housed in ad-

16  seg, defendant Kissinger signed for mail received from plaintiff, and sent it to the mail room for

17  processing.  SUF No. 38.

18          Plaintiff claims, without identifying the factual basis for his allegation, that

19  defendant Kirkland would sometimes not give him his mail, and "would actually hold onto my

20  mails and dispose of it."  Pl. Dec. 5:12-14.  Plaintiff additionally alleges that defendant Kissinger

21  threw away plaintiff's out-going legal mail, and, in particular, refused to sign for a letter

22  addressed to Inspector General after reading the letter in front of plaintiff.  Pl. Dec. 6:14-19; see

23  also Am. Comp. at 3©) ("[I]t was a complaint letter written about [defendant Kissinger] and C/O

24  Kirkland and other participants mention in this complaint.  It was address to the Inspector

25  General in Sacrament [sic].").  Defendants deny that Kissinger read plaintiff's letter in plaintiff's

26  presence or at any other place. SUF No. 39.

Defendant Garate was a correctional sergeant at HDSP during the time period covered by this complaint.  See Doc. No. 40-6, Declaration of R. Garate In Support of Defendants' Motion for Summary Judgment ("Garate Decl."), ¶¶ 1-2.  Plaintiff alleges that defendant Garate knew that the other defendants were abusing or mistreating plaintiff and chose to ignore it, or allowed it to happen.  Am. Comp. at 3(c) and (d).  Plaintiff additionally alleges that defendant Garate, along with defendants Kirkland, Kissinger, and Wright, on the days the defendants worked together, refused to allow plaintiff to go to the yard or to shower.  Id. at 3(c).  Plaintiff alleges that defendant Garate did not respond to plaintiff's questions about why he was denied yard and shower.  Id.

**Plaintiff's Claims**

The plaintiff's failure to identify his specific constitutional claims, and to link the legal claims to any set of facts, as well as plaintiff's failure to comply with the Federal Rules and the Local Rules, requires the undersigned to determine first what claims plaintiff could be making, and then to determine what relevant facts exist in the record to support or controvert the legal claim.

The court will accordingly divide plaintiff's claims as follows: (1) that, on November 28, 2006, defendants Wright and Kirkland used excessive force in violation of the Eighth Amendment when restraining and moving plaintiff into administrative segregation, and that defendant Kirkland used excessive force when pushed and held plaintiff to the ground and punched plaintiff in the face; (2) that plaintiff's conditions of confinement constituted cruel and unusual punishment in violation of the Eighth Amendment because: (a) plaintiff's living conditions were unsanitary; (b) plaintiff was denied showers and grooming tools; (c) plaintiff was denied a mattress, bedding and a fish kit for either one week or five days; (d) defendants did not serve plaintiff meals, would throw plaintiff's food tray, would tamper with his food, or would remove a course from the tray before serving; and (e) plaintiff was denied yard and exercise time; (3) that plaintiff's First Amendment rights were violated when (a) in retaliation for inmate

11

1  grievances filed by plaintiff against defendant Kirkland, defendants searched plaintiff's cell, and

2  harassed plaintiff; (b) defendant Kirkland denied plaintiff access to the law library; and (c)

3  defendants Kirkland and Kissinger interfered with plaintiff's mail; (4) that defendants violated

4  plaintiff's Fourth and Fourteenth Amendment rights when they searched his cell and confiscated

5  his property; and (5) that defendant Garate is liable as a supervisor who was aware of the

6  misconduct of other officers but did nothing to stop it.

7         In his complaint, plaintiff writes only that he seeks money damages to be

8  determined after trial. Doc. 15 at 3. In his deposition, plaintiff testified that he sustained

9  emotional distress as a result of the allegations against defendant Kirkland, defendant Kissinger,

10  and defendant Aurich. Dep. Tr. 69:20-70:24. Plaintiff testified that he claimed no damages

11  against defendants Wright and Garate. Dep. Tr. 70:25-71:5.

12  **Summary Judgment Standards Under Rule 56**

13         Summary judgment is appropriate when it is demonstrated that there exists "no

14  genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

15  law." Fed. R. Civ. P. 56(c).

16         Under summary judgment practice, the moving party

17
18      always bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the
pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any," which it believes

19      demonstrate the absence of a genuine issue of material fact.

20  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

21  P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

22  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

23  depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment

24  should be entered, after adequate time for discovery and upon motion, against a party who fails to

25  make a showing sufficient to establish the existence of an element essential to that party's case,

26  and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552.

1    "[A] complete failure of proof concerning an essential element of the nonmoving party's case

2    necessarily renders all other facts immaterial."  <u>Id.</u>  In such a circumstance, summary judgment

3    should be granted, "so long as whatever is before the district court demonstrates that the standard

4    for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323, 106 S. Ct. at

5    2553.

6            If the moving party meets its initial responsibility, the burden then shifts to the

7    opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

8    <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

9    (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

10   not rely upon the allegations or denials of its pleadings but is required to tender evidence of

11   specific facts in the form of affidavits, and/or admissible discovery material, in support of its

12   contention that the dispute exists.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11,

13   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

14   material, i.e., a fact that might affect the outcome of the suit under the governing law, <u>see</u>

15   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); <u>T.W. Elec.</u>

16   <u>Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the

17   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

18   nonmoving party, <u>see</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

19           In the endeavor to establish the existence of a factual dispute, the opposing party

20   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

21   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

22   versions of the truth at trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary

23   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

24   genuine need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

25   56(e) advisory committee's note on 1963 amendments).

26   \\\\\

1    In resolving the summary judgment motion, the court examines the pleadings,

2  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

3  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

4  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

5  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

6  at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

7  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

8  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

9  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

10 simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

11 taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

12 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

13    On July 9, 2010, the court advised plaintiff of the requirements for opposing a

14 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

15 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

16 1988).

17    The above advice would, however, seem to be unnecessary as the Ninth Circuit

18 has held that procedural requirements applied to ordinary litigants at summary judgment do not

19 apply to prisoner pro se litigants.  In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the

20 district courts were cautioned to "construe liberally motion papers and pleadings filed by *pro se*

21 inmates and ... avoid applying summary judgment rules strictly."  Id. at 1150.  No example or

22 further definition of "liberal" construction or "too strict" application of rules was given in Ponder

23 suggesting that any jurist would know inherently when to dispense with the wording of rules.

24 Since the application of any rule which results in adverse consequences to the pro se inmate

25 could always be construed in hindsight as not liberal enough a construction, or too strict an

26 application, it appears that only the essentials of summary judgment, i.e., declarations or

testimony under oath, and presentation of evidence not grossly at odds with rules of evidence, apply.

**Cruel and Unusual Punishment**[7]

"'Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" Somers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997), quoting Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 1000 (1992) (omitting internal quotations and citations).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994).

However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), citing, inter alia, Farmer v. Brennan, 511 U.S. at 832; Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982) ("[A]n institution's obligation under the eighth amendment is at an end if it furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety" [internal quotations omitted]).

/////

/////

---

[7] Neither party addresses the "physical injury" requirement of 42 U.S.C. § 1997e(e), which mandates that no federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury. The injury need not be significant, but it must be more than de minimus. See Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) (section 1997e(e) standard of de minimus injury is not the same as that of an Eighth Amendment claim, for which court must examine de minimus uses of force).

*Excessive Force*

In order to establish excessive force in violation of the Eighth Amendment, plaintiff must show that he has been subjected to the wanton and unnecessary infliction of pain. Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078 (1986).  The Ninth Circuit has relied on the following factors in determining whether an officer's application of force was undertaken in good faith, or maliciously and sadistically to cause harm: (1) the extent of the injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of a forceful response.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

In other words, while the absence of a serious injury is relevant to an excessive force inquiry, it is not determinative.  Hudson v. McMillian, 503 U.S. at 7.  Use of excessive force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injury.  Id.  However, not every malevolent touch by a prison guard gives rise to a federal cause of action.  Id.  The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from the constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.  Id. at 9-10; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries).

In addition, while verbal harassment or abuse alone does not generally rise to the level of a constitutional deprivation, harassment coupled with conduct implicating the Eighth Amendment's proscription against cruel and unusual punishment may present a claim cognizable under section 1983.  See Wayne v. Leal, 2009 U.S. Dist. LEXIS 131294 *12-13 (N. D. Cal. June 2, 2009); Young v. Franco, 2007 U.S. Dist. LEXIS 25924 *3 (N. D. Cal. March 26, 2007), citing Hudson v. Palmer, 468 U.S. 517, 528-30, 104 S. Ct. 3194 (1984).

\\\\\

1   Both parties have submitted evidence concerning plaintiff's processing into

2   administrative segregation on November 28, 2006.  Plaintiff claims that defendants Wright and

3   Kirkland used excessive force to escort him, and that defendant Kirkland forced him to the

4   ground, told him "I could squash you like a bug," and punched him while he was in the holding

5   cell.  Defendants, on the other hand, deny the use of excessive force or that Kirkland forced

6   plaintiff to the ground, taunted him, and punched him.  Considering all the evidence in the light

7   most favorable to the non-moving party, the court finds that there is a genuine issue of material

8   fact as to whether defendants Wright and Kirkland used excessive force against plaintiff on

9   November 28, 2006.

10   Essentially, it is plaintiff's word against the word of the prison officials as to

11   whether the facts underlying plaintiff's claims are true, and the court cannot find that plaintiff's

12   version is so unreasonable that a rational trier of fact would not find in his favor.  Accordingly,

13   the court will recommend that summary judgment on the excessive force claims against Wright

14   and Kirkland be denied.

15   In addition, the court finds that defendant Kirkland's use of taunting language, if

16   proven, would be probative of whether any force was applied maliciously or sadistically.

17   Accordingly, to the extent plaintiff is raising a verbal harassment claim against defendant

18   Kirkland for his language in connection with plaintiff's processing into ad-seg, this court

19   recommends that, as to such a claim, defendants' summary judgment motion be denied.

20   ***Conditions of Confinement***

21   An Eighth Amendment claim that a prison official has deprived inmates of

22   humane conditions must meet two requirements, one objective and one subjective.  Lopez v.

23   Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (en banc), quoting Allen v. Sakai, 48 F.3d 1082,

24   1087 (9th Cir. 1995).  Under the objective requirement, the prison official's acts or omissions

25   must deprive an inmate of the minimal civilized measure of life's necessities.  Id.  The subjective

26   requirement, relating to defendant's state of mind, requires deliberate indifference.  Id.

17

1     ***Outdoor Exercise***

2          Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates

3     confined to continuous and long-term segregation.  Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir.

4     1996).  The Ninth Circuit has held that plaintiffs alleging a six-and-one-half week deprivation

5     met the "objective" standard.  See Lopez v. Smith, 203 F.3d at 1132-33, citing Allen v. Sakai,

6     supra (noting that, in Allen, allegation that prisoner received only 45 minutes of exercise per

7     week over six week period was sufficient to meet objective standard).  Although a neutral reason

8     such as prison safety may subordinate a prisoner's right to exercise to the right to officer and

9     inmate safety, deliberate indifference to the right to exercise, or the desire to cause harm is

10    actionable.  Noble v. Adams, 646 F.3d 1138, 1143 (9th Cir. 2011); Thomas v. Ponder, supra.

11         Plaintiff in this case has alleged that defendants denied him outdoor exercise for

12    four months.  Defendants allege that plaintiff refused yard access, which allegation plaintiff

13    denies.  The court's own review of the RDAs reflects that plaintiff did not exercise, for whatever

14    reason, for as long as 62 days from November 28, 2006 through March 2007.  Essentially,

15    plaintiff alleges that he was being punished for his role in the inmate on officer violence.

16    Because the period of deprivation reflected in the RDAs is longer than that which the Ninth

17    Circuit has held to meet the objective standard, and because the parties dispute the reasons for

18    the deprivation, plaintiff has raised a genuine issue of material fact regarding whether defendants

19    impermissibly denied him outdoor exercise.  The court will accordingly recommend that

20    summary judgment be denied as to plaintiff's Eighth Amendment outdoor exercise claim.

21         ***Sanitation/Personal Hygiene***

22         Subjection of a prisoner to lack of sanitation that is severe or prolonged can

23    constitute an infliction of pain within the meaning of the Eighth Amendment.  See, e.g., Johnson

24    v. Lewis, 217 F.3d 726, 732-33 (9th Cir. 2000), cert. denied, 532 U.S. 1065, 121 S. Ct. 2215

25    (2001) (prisoners' allegations that they did not receive adequate access to toilets, and then were

26    not allowed to clean themselves after, if believed, is sufficiently serious to satisfy objective

1    component); Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir.), cert. denied, 516 U.S.

2    916, 116 S. Ct. 306 (1995).

3            The denial of adequate clothing can also inflict pain under the Eighth

4    Amendment.  See Walker v. Sumner. 14 F.3d 1415, 1421 (9th Cir. 1994), citing Hoptowit v.

5    Ray, 682 F.2d at 1246, abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472,

6    115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

7            In addition, indigent inmates have the right to personal hygiene supplies such as

8    toothbrushes and soap.  See Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996).

9            Plaintiff has alleged that he was not provided with a fish kit, bedding and mattress

10   for up to a week, that he was given clothing that had spit on it, that he was denied grooming

11   tools, and that he was not allowed to exchange his laundry.  Plaintiff also alleges that his sheets

12   and blankets were stuffed in the toilet, and that there was toilet water on the floor of cell number

13   139 when he first entered.  Plaintiff additionally alleges that he was not allowed to shower for

14   five months.  Again, the supposed factual backdrop to these deprivations were the alleged desire

15   of defendants to punish plaintiff for his role in the inmate on officer violence.

16           Defendants allege that plaintiff was given his fish kit, mattress, and bed roll while

17   in ad-seg, and deny plaintiff's allegations that he was given dirty clothing or not allowed to

18   exchange his laundry.  Defendants also allege that there was no visible indication of a toilet leak

19   in plaintiff's cell.  Finally, defendants allege that plaintiff was offered showers, but refused them.

20           The court's own review of the RDAs reflects that, in five months, plaintiff

21   showered seven times, and refused to shower fifty-six times.

22           Considering all the evidence in the light most favorable to the non-moving party,

23   the court finds that there is a genuine issue of material fact as to whether defendants denied

24   plaintiff access to showers, adequate clothing, and adequate supplies, sufficient to inflict pain

25   within the meaning of the Eighth Amendment.  Accordingly, this court will recommend that

26   defendants' motion for summary judgment be denied as to plaintiff's sanitation and personal

1  hygiene claims.

2  ### *Food*

3  Adequate food is a basic human need protected by the Eighth Amendment.

4  Keenan v. Hall, 83 F.3d at 1091.  While prison food need not be tasty or aesthetically pleasing, it

5  must be adequate to maintain health.  Id., citing LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir.

6  1993).

7  In this case, plaintiff has testified that he received no food on his dinner tray

8  twenty times; that he received no breakfast three times; and that he received no main course

9  twenty times.  Defendants allege that they served plaintiff his dinners, and that they did not deny

10 him a course or tamper with his food.  Considering the evidence in the light most favorable to the

11 non-moving party, there is a genuine issue of material fact as to whether defendants failed to

12 provide plaintiff with adequate food.  Accordingly, this court will recommend that defendants'

13 motion for summary judgment be denied as to plaintiff's food claims.

14 ### *Harassment*

15 Plaintiff alleges that defendants Kirkland and Aurich verbally harassed him

16 continuously throughout his stay in administrative segregation in retaliation for inmate appeal

17 forms that plaintiff filed.  See Am. Comp. at 3(d); Pl. Decl. 7:20-23.

18 Plaintiff also alleges that defendant Kirkland would kick plaintiff's door or use his

19 flashlight to wake plaintiff during routine counts.  Am. Comp. at 3(d); Pl. Dec. 8:2-5.

20 Verbal harassment or abuse alone is not sufficient to state a constitutional

21 deprivation under 42 U.S.C. § 1983.  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir.

22 1987).  However, "intentional harassment of even the most hardened criminals cannot be

23 tolerated by a civilized society."  Hudson v. Palmer, 468 U.S. at 528.

24 There are five basic elements for a viable claim of First Amendment retaliation in

25 the prison context: (1) an assertion that state actor took some adverse action against an inmate (2)

26 because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

1   exercise of his First Amendment rights or caused some other harm, and (5) the action did not

2   reasonably advance a legitimate correctional goal.  See Brodheim v. Cry, 584 F.3d 1262, 1269

3   (9th Cir. 2009).  Plaintiff has failed to establish the requisite elements of a retaliation claim,

4   because he has not alleged or otherwise shown that the verbal and non-verbal harassment

5   somehow chilled plaintiff's exercise of his First Amendment rights or caused some harm that

6   was other than de minimis.  See id..

7           However, as noted above, any abusive language or intentional harassment, if

8   proven, would be probative of whether defendants were deliberately indifferent to the allegedly

9   unconstitutional conditions of plaintiff's confinement.  Accordingly, to the extent plaintiff is

10  raising a harassment claim against defendants in connection with plaintiff's conditions of

11  confinement, this court recommends that, as to such a claim, defendants' summary judgment

12  motion be denied.

13          As to any claim that claims against defendants Kirkland and Aurich for their

14  alleged harassment of plaintiff in violation of the First Amendment, this court will recommend

15  that defendants' motion for summary judgment on such a claim be granted.

16  **Law Library Access**

17          Plaintiff alleges, in his declaration but not in his complaint, that defendant

18  Kirkland denied him access to the law library by throwing away plaintiff's law library request

19  forms.

20          Prisoners have a constitutional right of access to the courts.  See, e.g., Lewis v.

21  Casey, 518 U.S. 343, 346, 116 S. Ct. 2174 (1996).  This right, however, "guarantees no particular

22  methodology but rather the conferral of a capability – the capability of bringing contemplated

23  challenges to sentences or conditions of confinement before the courts....[It is this capability]

24  rather than the capability of turning pages in a law library, that is the touchstone" of the right of

25  access to the courts.  Lewis, 518 U.S. at 356-57.

26  \\\\\

In order to establish a violation of a right of access to the courts, a prisoner must establish that he or she has suffered an actual injury.  Lewis, 518 U.S. at 349.  An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  Lewis, 518 U.S. at 348.

In this case, plaintiff has alleged no injury at all.  Instead, he claims only that he learned from the law librarian that defendant Kirkland threw away plaintiff's law library request forms.  Pl. Dec. at 4:25-5:1.  There is nothing in the record to indicate that plaintiff had pending or contemplated litigation, or that plaintiff was unable to meet a filing deadline or to present a claim.  Accordingly, this court will recommend that summary judgment be granted on plaintiff's law library access claims.

**Legal Mail**

*Defendant Kissinger*

Plaintiff alleges generally that defendant Kissinger threw away his outgoing legal mail, and specifically that defendant Kissinger read in plaintiff's presence a complaint letter written by plaintiff to the "Inspector General" in Sacramento.  Plaintiff claims that defendant Kissinger "refuse to sign the legal mail" and then failed to mail the letter.  See Am. Comp. at 3(c) (alleging "because I never got a letter back from the legal place that I had wrote so I know that C/O Kissinger had thrown that letter away in the trash.").

Generally, prisoners have a First Amendment right to send and to receive mail.  See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  However, a prison may adopt regulations which infringe on an inmate's constitutional rights if those regulations are reasonably related to legitimate penological interests.  Turner v. Safely, 482 U.S. 78, 89, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987).

For example, prison officials may, consistent with the First Amendment, open mail in the presence of the prisoner for visual inspection.  See, e.g., Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981).  In addition, plaintiff's letter to the "Inspector General" in

1   Sacramento was not legal mail, because, based on what plaintiff has alleged, it was not addressed

2   to or from a particular attorney.  See Wolff v. McDonnell, 418 U.S. 539, 576, 94 S. Ct. 2963

3   (1974) (stating that legal mail must "be specially marked as originating from an attorney, with his

4   name and address being given, if [it is] to receive special treatment").  Instead, it appears that

5   plaintiff's letter was to a county or state agency,[8] which does not qualify as legal mail.  See

6   O'Keefe v. Van Boening, 82 F.3d 322, 325-27 (9th Cir. 1996) (holding that mailings to state

7   agencies do not qualify as legal mail).

8           Reviewing the disputed facts in the light most favorable to plaintiff, a defendant is

9   entitled to qualified immunity for the opening of legal mail outside the presence of the inmate

10  (here plaintiff).  See Powell v. Gibbons, 2011 WL 4794926 (9th Cir. 2011) and cases cited

11  therein.  Additionally, there is nothing in the record to suggest that defendant Kissinger did not

12  mail plaintiff's letter, other than plaintiff's sheer speculation.  Accordingly, this court will

13  recommend that defendants' motion for summary judgment on plaintiff's legal mail claims

14  against defendant Kissinger be granted.

15          *Defendant Kirkland*

16          Plaintiff alleges that "C/O Kirkland has at time not given me my mails."  Am.

17  Comp. at 3(b); and that "[s]ome time C/O Kirkland would not give me my mail.  He would

18  actually hold onto my mails and dispose of it."  Pl. Dec. at 5:12-14.

19          Plaintiff provides no factual basis for his allegations.  For example, plaintiff does

20  not tell the court how he is aware of mail that he did not receive, or how he is able to allege that

21  defendant Kirkland disposed of his mail.  While the court is sensitive to its obligation to treat the

22  pro se plaintiff's allegations liberally, in this instance, the allegation appears to be nothing more

23

24          [8] An internet search based upon the keywords "inspector general Sacramento" returns as
    the top result the Office of the Inspector General for Sacramento County.  Also returned as
25  results are Office of the Inspector General, United States Department of Agriculture, and Office
    of the Inspector General, an independent state office responsible for, among other things,
26  oversight of the disciplinary process of the CDCR.

1    than conjecture or speculation, and should be dismissed.

2           Accordingly, this court will recommend that defendants be granted summary

3    judgment as to plaintiff's mail claims.

4    **Cell Searches**

5           Plaintiff alleges that defendants conducted retaliatory searches of his cell and that

6    they threw away or confiscated items without giving plaintiff a receipt.  Pl. Dec. at 5:2-12; Am.

7    Comp. at 3(b).  Plaintiff does not dispute that HDSP's operational procedures required officers to

8    conduct cell inspections once a week in ad-seg.   Although not specifically articulated, plaintiff

9    appears to allege that his cell was searched in violation of the First and Fourth Amendments and

10   that his property was improperly confiscated in violation of the Fourteenth Amendment.

11                    Fourth Amendment Claims

12          Prisoners have no Fourth Amendment right of privacy in their cells.  See, e.g.,

13   Hudson v. Palmer, 468 U.S. 517, 525-28, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) ("A right of

14   privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and

15   continual surveillance of inmates and their cells required to ensure institutional security and

16   internal order."); Seaton v. Mayberg, 610 F.3d 530, 534 (9th Cir. 2010).

17                    Due Process Claims

18          Where a prisoner alleges the deprivation of a liberty or property interest in

19   violation of the Fourteenth Amendment, caused by the unauthorized negligent or intentional

20   action of a prison official, the prisoner cannot state a constitutional claim where the state

21   provides an adequate post-deprivation remedy.  See, e.g., Hudson v. Palmer, 468 U.S. at 533.

22          California provides such a remedy for prisoners.  See Cal. Gov't Code §§ 810 et

23   seq.  See also Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).

24                    Retaliation

25          Plaintiff alleges that defendant Kirkland searched plaintiff's cell "in retaliation for

26   me having wrote numerous CDC 602 Inmate Appeal form about C/O Kirkland misconducts."  Pl.

1  Dec. 5:15-16; Am. Comp. at 3(b).  Plaintiff alleges that "[e]very time I'd turn in a 602, my cell

2  would get searched within that week or within three days..."  Dep. Tr. 61:9-11.

3         As noted above, there are five basic elements for a viable claim of First

4  Amendment retaliation in the prison context: (1) an assertion that state actor took some adverse

5  action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

6  (4) chilled the inmate's exercise of his First Amendment rights or caused some other harm, and

7  (5) the action did not reasonably advance a legitimate correctional goal.  See Brodheim v. Cry,

8  584 F.3d at 1269.

9         Plaintiff has made a sufficient (barely) showing in terms of material issues of fact

10 which preclude judgment in defendant Kirkland's favor.

11        Accordingly, this court will recommend that defendants be granted summary

12 judgment on plaintiff's claims that defendants searched plaintiff's cell in violation of his First,

13 Fourth, and Fourteenth Amendment rights.

14 **Supervisory Liability**

15        Plaintiff alleges that defendant Garate knew of the alleged misconduct of the other

16 defendants, but did nothing to stop it.  See Am. Comp. at 3(c)-3(d).

17        Liability under 42 U.S.C. § 193 arises only upon a showing of personal

18 participation by the defendant.  See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, —, 129 S. Ct. 1937,

19 1948 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff

20 must plead that each Government-official defendant, through the official's own individual

21 actions, has violated the Constitution.")  However, a defendant may be held liable as a supervisor

22 under § 1983 if there exists either (1) his or her personal involvement in the constitutional

23 deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and

24 the constitutional violation.  See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal

25 citations omitted).

26 \\\\\

1   　　　　As noted above, there are genuine issues of material fact as to whether defendants

2   violated plaintiff's Eighth Amendment rights.  Plaintiff has alleged that defendant Garate

3   participated in the alleged deprivations, and also that defendant Garate was aware of the

4   misconduct of the other defendants but did nothing to stop it.  Accordingly, there is a genuine

5   issue of material fact  as to whether defendant Garate is additionally liable as a supervisor, and

6   this court will recommend that defendants' motion for summary judgment be denied as to

7   plaintiff's supervisory liability claim.

8   **Qualified Immunity**

9   　　　　Defendants assert that they are immune from suit under the "qualified immunity"

10  doctrine.  Generally, government officials performing discretionary functions are shielded from

11  liability for civil damages insofar as their conduct does not violate clearly established statutory or

12  constitutional rights.  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982).  If the law

13  is clearly established, the immunity defense ordinarily should fail, since a reasonably competent

14  public official should know the law governing his conduct.  Id.

15  　　　　In determining whether a government officer is immune from suit based on the

16  doctrine of qualified immunity, the court must answer two questions.  The first is, do the facts

17  alleged show that the officer's conduct violated a constitutional right?  See Saucier v. Katz, 533

18  U.S. 194, 201, 121 S. Ct. 2151 (2001).  The second is, was the right "clearly established"?  Id.  If

19  the law did not put the defendant on notice that his conduct would be clearly unlawful, summary

20  judgment based on qualified immunity is appropriate.  Id. at 202.

21  　　　　In this case, (with the exception of legal mail opening) there are at least genuine

22  issues of material fact with respect to plaintiff's claim that defendants subjected him to cruel and

23  unusual punishment in violation of the Eighth Amendment.  Furthermore, the law outlined above

24  was clearly established when all of the actions relevant to plaintiff's claims took place.

25  Therefore, defendants are not immune from plaintiff's Eighth Amendment claims under the

26  doctrine of qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be denied as to plaintiff's Eighth Amendment claims against all defendants, as to plaintiff's supervisory liability claims against defendant Garate, and the Kirkland cell search retaliation claim; and be granted as to all remaining claims.

2. Plaintiff be ordered to file his pre-trial statement within 30 days of any order adopting the foregoing findings and recommendations, and that defendants be ordered to file their pre-trial statement within 21 days after service of plaintiff's.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 24, 2012

　　　　　　　　　　  /s/ Gregory G. Hollows
　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

GGH:rb
xion3345.fr

27